FILED

2024 Mar-18  PM 04:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **PHILLIP HAROLD THEIL,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.: 4:22-cv-00673-RDP** |
| } | |
| **MARTIN J. O'MALLEY,** } | |
| **COMMISSIONER OF SOCIAL** } | |
| **SECURITY,** } | |
| } | |
| **Defendant.** } | |

### MEMORANDUM OF DECISION

Plaintiff Phillip Harold Theil brings this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706 seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI"). (Doc. # 1; Doc. # 14-2 at 55); s*ee* 42 U.S.C. 1383(c). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I.      Proceedings Below

On June 29, 2018, Plaintiff filed applications for DIB and SSI benefits alleging disability beginning on February 1, 2006.[1] (R. 111-12). Plaintiff's applications were denied by the Social Security Administration on November 21, 2018. (R. 86-112). Plaintiff then requested a hearing before an administrative law judge (ALJ). (R. 125). Three hearings were held before an ALJ between December 2019 and August 2021, including a supplemental hearing scheduled for August

---

[1] He later amended his alleged onset date to June 2018 (Tr. 58, 211).

2021 that Plaintiff failed to attend. (R. 45-85).[2]  On September 1, 2021, the ALJ issued a decision denying Plaintiff's claim. (R. 35). Subsequently the Appeals Council denied Plaintiff's request for review. (R. 6-8).

When he testified before the ALJ, Plaintiff was 37 years old, he had completed three years of college, and had obtained an associate degree in science. (R. 59, 297, 302). He had also worked as a pharmacy technician from approximately 2001 through 2007. (R. 290-91). Plaintiff alleged he originally became disabled on February 1, 2006. (R. 86, 250). He alleged he was disabled due to Kawasaki disease, Raynaud's syndrome, attention deficit disorder/attention deficit hyperactivity disorder ("ADHD"), depression, and a torn "[a]cromium [sic]/clavicle ligament." (R. 301).

Plaintiff was diagnosed with ADHD in approximately 1998 by Dr. Richard Ince of Birmingham Psychiatry. (R. 394). In 1999, Dr. Ince saw Plaintiff and reported that Plaintiff had a good response to the ADD medication Dexadrine. (*Id.*).

In 2001, Plaintiff underwent a psychoeducational evaluation before attending the Honors Program at Auburn University. (R. 394). Intellectual testing yielded a full scale IQ score between 117 and 126, within the bright to mid-superior range. (*Id.*). This examination confirmed an ADHD diagnosis with generalized anxiety disorder, including social anxiety and obsessive-compulsive features. (R. 395). It was recommended that Plaintiff be allowed extra time for testing and to take tests in a private room to minimize distractions. (*Id.*). Plaintiff's ADHD medications were adjusted following this evaluation. (*Id.*).

Between 2005 and 2007, Plaintiff was seen at Grandview Behavioral Health to refill his ADHD medication Adderall. (R. 396).

---

[2] The supplemental hearing proceeded with his lawyer present. (*Id.*).

In 2007, Plaintiff returned to see Dr. Ince (for the first time since 2001) because his medications were not controlling his ADHD. (R. 396). He had withdrawn from Auburn in approximately 2002 because his medications were not working. (*Id*.). At the time, he was employed as a pharmacy technician. (*Id*.). Dr. Ince diagnosed Plaintiff with ADHD, generalized anxiety disorder including social anxiety and depression, with a possible bipolar component. (R. 396-97).

In 2008 and 2009, Plaintiff was again seen at Grandview Behavioral Health to refill his medications: Adderall, Dexadrine, and Zoloft. (R. 397). He reported taking classes at Snead State Community College. (*Id*.)

In 2014, Plaintiff began seeing Dr. Benjamin Carr at Carr Mental Wellness. (R. 397). Plaintiff complained to Dr. Carr about his ADHD and the fact that he had not found a steady job. (*Id*.). Dr. Carr diagnosed Plaintiff with unspecified hyperkinetic syndrome of childhood.[3] (*Id*.). Plaintiff continued seeing Dr. Carr though 2015, and was prescribed Adderall and Lexapro for his various conditions: unspecified hyperkinetic syndrome of childhood, ADHD, and depressive disorder. (R. 397-98). On August 15, 2015, Plaintiff reported to Dr. Carr that he had been depressed because he found out his girlfriend was doing Meth and his dog had died. (R. 398). On August 31,

---

[3] "The American Psychiatric Association's criteria for Attention Deficit Hyperactivity Disorder (ADHD), and the World Health Organization's criteria for hyperkinetic disorder each list a very similar set of 18 symptoms, the differing rules governing diagnosis meant that hyperkinetic disorder featured greater impairment and more impulse-control difficulties than typical ADHD, and it most resembled a severe case of ADHD combined type." https://en.wikipedia.org/wiki/Hyperkinetic_disorder#cite_note-Banaschewski&Rohde-1 (citing Banaschewski, Tobias; Rohde, Louis (2009). "Phenomenology." In Banaschewski, Tobias; Coghill, David; Danckaerts, Marina (eds.). Attention Deficit Hyperactivity Disorder and Hyperkinetic Disorder. Oxford, UK: OUP. pp. 3–18. ISBN 9780191576010)) (last visited March 12, 2024).

2015, Plaintiff reported to Dr. Carr that he was still having some depression but the Lexapro was helping and that he had a new girlfriend he feels is the love of his life. (*Id*.).

In January 2016, Plaintiff saw Dr. Alan Pernick, at Doctors Medical Care of Gadsden for an injury to his wrist suffered when he fell down some steps. (R. 399). He was diagnosed with avascular necrosis/partial collapse of lunate, consistent with Kienock's disease. (*Id*.). At that time, Plaintiff reported that he was taking Indomethacin ER and Norco for pain, and that he had smoked five (5) packs of cigarettes per day for the last ten years. (*Id*.).

Plaintiff was referred to Dr. John Payne at Anniston Orthopaedics for his wrist. (*Id*.). His wrist was immobilized in a brace. (*Id*.). In February 2016, Plaintiff was out of the brace and doing range of motion exercises. (*Id*.). Plaintiff reported that most of the pain was resolved. (*Id*.).

Later in February 2016, Plaintiff was again seen by Dr. Pernick at Doctors Medical Care of Gadsden after an altercation with a family member in which Plaintiff was pushed, fell, and hurt his shoulder. (*Id*.). He was diagnosed with a bruised left shoulder and prescribed Tramadol. (*Id*.).

In May 2016, Plaintiff returned to see Dr. Carr. (R. 400). He reported that he and his girlfriend had broken up and he that had got attached to her daughter and really missed her. (*Id*.). He reported that he had decided to apply to radiology school. (*Id*.). Dr. Carr refilled prescriptions for Adderall and Lexapro. (*Id*.).

Also in May 2016, Plaintiff returned to Dr. Payne at Anniston Orthopaedics, this time for evaluation of his shoulder. (*Id*.). Three months out from the initial injury he was diagnosed with a grade 3 AC separation of the left shoulder, and impingement and bursitis of the right shoulder. (*Id*.). He was given injections in both shoulders. (*Id*.). Surgical options were discussed, but Plaintiff elected not to proceed with surgery. (R. 625).

4

In August 2016, Plaintiff returned to see Dr. Carr. (R. 400). He reported that he had gotten a new job and that he was worried that his mother had dementia, but it was reported that his mood and anxiety were well controlled, and his focus/attention was good. (*Id.*). Plaintiff returned to see Dr. Carr in October 2016 having lost his job. (*Id.*). He noted he thought he was handling things okay, but living with his mother was driving him crazy and if it wasn't for the Lexapro he would "blow." (*Id.*). Plaintiff continued to see Dr. Carr through 2017 and into May 2018, reporting things such as "I'm okay," "doing well," "I'm good," or "I'm pretty good." (R. 401). During this period he reported no changes in his stressors and he continued to be prescribed Adderall and Lexapro. (*Id.*).

On May 28, 2018, Plaintiff reported to Dr. Carr that "I'm pretty good." (R 401-02). He stated that his focus/concentration had been fair, he was sleeping well, and there were no changes in stressors. (R. 402). He reported that he was compliant with taking his Adderall and Lexapro. (*Id.*).

The following month, in June 2018, Plaintiff filed applications for DIB and SSI benefits. (R. 111-12).

In November 2018, following the filing of his applications for DIB and SSI benefits, Plaintiff saw Dr. Jimmy A. Oguntuyo at Partners Medical Clinic for a Disability Medical Exam. (R. 402). He described chronic left shoulder pain at a level of 7-8 out of 10. (*Id.*). He reported the pain was worse by elevation movement, it was associated with left side neck pain which was temporarily relieved by Ibuprofen, and he had difficulty reaching the upper part of his back. (*Id.*). Plaintiff reported his ADHD was stable on Adderall and Lexapro was taken daily for depression. (*Id.*). Dr. Oguntuyo's assessment of Plaintiff's condition was this: pain in left shoulder; other

5

chronic pan; sprain of left acromioclavicular joint; Cervicalgia; ADHD; Raynaud's syndrome without gangrene; major depressive disorder, single episode, mild; personal history of other diseases of circulatory system. (*Id*.).

On the same day in November 2018 that Plaintiff saw Dr. Oguntuyo, Dr. Krishna Reddy, a neurologist, reviewed Plaintiff's then available medical records, but she did not meet with Plaintiff. (R. 86-109). Dr. Reddy opined that Plaintiff had no serve physical impairments. (R. 98-99). Dr. Reddy further opined that there was not enough evidence to determine the severity of Plaintiff's physical impairments and rate his claim before September 2009, when his insured period for SSDI expired. (*Id*.).

In September 2018, Dr. Samuel Williams, a psychiatrist, reviewed Plaintiff's then-available medical records, but also did not meet with Plaintiff. (R. 92-96). Dr. Williams identified Plaintiff's ADHD and depression as severe mental impairments. (*Id*.). Dr. Williams opined that: Plaintiff could carry out simple instructions, sustain attention to routine and familiar tasks for extended periods, and tolerate light work pressures; should avoid rapid changes; and could adapt to infrequent, well explained changes (R. 95-96). He further opined Plaintiff's contact with the public and coworkers should be casual, and feedback should be supportive (R. 96).

Dr. Estock also reviewed the evidence of record in November 2018 related to Plaintiff's DIB claim (R. 106). Dr. Estock noted that Plaintiff's date last insured expired on September 30, 2009. (R. 23, 106). He determined that while Plaintiff currently has medically determinable impairments ("MDI") of ADHD and depressive disorder, there were no objective findings to establish a potential MDI or severity prior to the expiration of his date last insured (R. 106). Dr.

Estock concluded there was insufficient evidence to determine severity of impairment before the date last insured (R. 106).

In November 2019, Plaintiff's attorney provided Plaintiff's medical records to Dr. June Nichols at Gadsden Psychological Services, LLC for review. (R. 402). Dr. Nichols also saw Plaintiff in person and administered the Minnesota Multiphasic Personality Inventory 2 to him. (R. 404). Notably, at the time Dr. Nichols saw Plaintiff, he reported that he was not taking his medications. (R. 405). The results of the MMPI2 confirmed Plaintiff's ADHD and major depressive disorder diagnoses and suggested a borderline personality disorder diagnosis. (R. 404).

Dr. Nichols concluded that Plaintiff appeared able to understand instructions, but would have difficulty remembering complex instructions, is unable to sustain concentration, and is unable to maintain effective social interaction on a consistent/independent basis with supervisors and coworkers. (R. 404-05). She concluded he was unable to deal with normal pressures in a competitive work setting and was unable to manage his own funds. (R. 405). Dr. Nichols also concluded that she would expect Plaintiff to be off task 20% of the time and fail to report to work 20% of the time. (*Id.*). She reported that, at that time, Plaintiff was prescribed no medications. (*Id.*).

On February 6, 2020, Plaintiff was seen at Canterbury Family Practice Center for an office visit. (R. 653). Plaintiff reported that he was experiencing symptoms of ADHD and depression but that he was not taking his medication. (*Id.*).

Dr. Nichols performed a second mental examinations of Plaintiff on April 21, 2021 (R 674-77). Plaintiff reported that he had been off off his medications for ADHD and depression for several years. (R. 674). In the narrative portion of the 2021 evaluation, Dr. Nichols provided very similar conclusions to those made in her 2019 evaluation. (R. 641, 671-77).

In his September 21, 2021 decision, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 1, 2006, and met the insured status requirements through September 30, 2009. (R. 23). He found that Plaintiff had severe impairments of major depressive disorder, ADHD, avascular necrosis of the right wrist, and left shoulder acromioclavicular ("AC") joint separation. (*Id.*).

The ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. part 404, subpart P, appendix 1. (R. 24). The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work. (R. 26). Relying on testimony of the Vocational Expert ("VE"), the ALJ found Plaintiff could not perform any past relevant work. (R. 33, 48-49). Based on additional VE testimony (R. 48-50), the ALJ found that given Plaintiff's vocational factors, he could perform other jobs existing in significant numbers in the national economy, including the occupations of photocopy machine operator, office helper, and routing clerk. (R. 33-34). The ALJ concluded Plaintiff was not disabled through the date of the decision, September 1, 2021, and thus not eligible for SSI. (R. 34-35).

On March 21, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, (R. 6-8), making that decision the final decision of the Commissioner, and therefore, a proper subject of this court's review. 42 U.S.C. 405(g).

## II.    ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1 *et. seq.* First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *Id.* § 404.1520(b). Substantial work activity is work activity that involves doing significant physical

8

or mental activities. *Id.* § 404.1572(a). Gainful work activity is work that is done for pay or profit. *Id.* § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. Absent such impairment, the claimant may not claim disability. Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1. *Id.* §§ 404.1520(d), 404.1525, 404.1526. If such criteria are met, the claimant is declared disabled.

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite her impairments. *Id.* § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. If the claimant is determined to be capable of performing past relevant work, then she is deemed not disabled. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. *Id.* § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. *Id.* §§ 404.1512(g), 404.1560(c).

Here, the ALJ determined that: (1) Plaintiff had not engaged in substantial gainful activity since the onset of his alleged disability; (2) Plaintiff has severe impairments namely, major

depressive disorder, attention deficit hyperactivity disorder (ADHD), avascular necrosis of the right wrist, and left should acromioclavicular ("AC") joint separation that more than minimally affect his ability to perform work-related activities; but (3) Plaintiff's medically determinable impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (R. 24). After consideration of the record, the ALJ found that Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with limitations. (R. 26-33). Based on the testimony of the VE, the ALJ found that Plaintiff was not capable of performing any past relevant work. (R. 33). Based on additional VE testimony, (R. 48-50), the ALJ further found that given Plaintiff's vocational factors, he could perform other jobs existing in significant numbers in the national economy, including the occupations of photocopy machine operator, office helper, and routing clerk. (R. 33-34). The ALJ thus concluded that Plaintiff is not disabled as defined by the Act, and therefore not eligible for SSI. (R. 34-35).

## III.    Plaintiff's Argument for Reversal

Plaintiff presents six arguments for reversing the decision of the ALJ. First, Plaintiff contends that the ALJ failed to properly apply SSR 96-8p when developing his RFC because the ALJ failed to include restrictions and limitations related to Plaintiff's interaction with supervisors and failed to explain conflicts between the limitations in the medical opinions she found persuasive, and the limitations in his RFC. (Doc. # 18 at 22-25). Second, Plaintiff asserts the ALJ did not pose proper hypothetical questions to the VE. (Doc. # 18 at 25-29). Third, Plaintiff argues that the ALJ's decision was not supported by substantial evidence. (Doc. # 18 at 29). Fourth, Plaintiff contends that the ALJ failed to consider the episodic nature of bipolar disorder. (Doc. # 18 at 29-31). Fifth, Plaintiff asserts that the ALJ failed to provide an articulate assessment of the Nichols Opinions (in

violation of 20 C.F.R. § 404.1520c and 416.920c), failed to address the "consistency" of the Nichols Opinions and the "supportability" of the First Nichols Opinion, and fell short in assessing the Williams and Estock opinions. (Doc. # 18 at 31-38). Finally, Plaintiff argues that the ALJ failed to address the persuasiveness of the medical opinions. (Doc. # 18 at 39-40).

## IV.   Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); s*ee also Martin,* 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005).

## V.   Discussion

The court addresses each of Plaintiff's arguments in turn below.

### A.   <u>The ALJ properly applied Social Security Ruling ("SSR") 96-8p in developing Plaintiff's RFC.</u>

After careful review, the court concludes the ALJ did not err in applying the agency's regulations in developing Plaintiff's RFC.

       **1.**       **While the ALJ did not include restrictions and limitations related to Plaintiff's interaction with supervisors, the ALJ was not required to do so.**

Plaintiff contends that based on Dr. Williams's rating that he was moderately limited in interacting with supervisors and responding appropriately to criticism from supervisors, the ALJ should have included an additional limitation related to his ability to interact with or respond to supervisors in her RFC finding. (Doc. #18 at 23). However, the rating cited by Plaintiff is contained in the summary conclusion section of the state agency form, and the state agency form expressly says "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s)." (R. 94-96). The ratings are "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." Program Operations Manual System ("POMS") DI § 24510.060(B)(2)(a), (4); *see also Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012) (explaining the POMS summary conclusions ratings are not an RFC assessment). The summary conclusion ratings are not prior administrative medical findings as defined in the regulations, 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5), so an ALJ is not required to analyze them in the decision under 20 C.F.R. §§ 404.1520c and 416.920c. Thus, an ALJ does not have to include the rating in the RFC. *See Land*, 494 F. App'x at 49; *see also Jones v. Comm'r of Soc. Sec.,* 478 F. App'x 610, 612 (11th Cir. 2012).

In the narrative portion of the form, Dr. Williams only noted that Plaintiff's "[c]ontact with the public and coworkers should be casual[,] [and] [f]eedback should be supportive." (R. 96). As

the ALJ explained, he found Dr. Williams's opinion "generally persuasive with the exception of portions that provide vague, non-vocationally relevant terms." (R. 32). The ALJ reasonably accounted for Dr. Williams's opinion in the RFC by finding Plaintiff "could maintain attention and concentration to carry out simple instructions in at least two-hour intervals over an 8-hour workday with customary work breaks; have occasional contact with coworkers and the general public; and could adapt to infrequent, well-explained changes in the work environment." (R. 26).

Both *Land* and *Jones*, directly address this question. For example, in *Land*, the court noted:

> Checking the box "Moderately Limited" means only that the claimant's capacity is impaired; it does not indicate the degree and extent of the limitation. *See id.* § 24510.063(B)(2). After checking the boxes as an "aid," *id.* § 24510.060(B)(2), a doctor is then required to detail his actual RFC assessment. *See id.* § 24510.060(B)(4).

*Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012); *see also Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610, 612 (11th Cir. 2012). Therefore, Plaintiff has not shown that Dr. Williams's opinion required greater limitations than those included in the RFC finding.

### 2. The ALJ properly considered medical opinions and prior administrative medical findings.

Plaintiff contends that, under SSR 96-8p, "[t]he RFC must always consider and address medical source opinions," and "[w]here the medical opinion and the RFC conflict, the ALJ must explain why." (Doc. # 18 at 23). Plaintiff concedes that the ALJ explained why she did not adopt the limitations in the Nichols Opinions. (*Id.*). However, Plaintiff claims that the ALJ did not explain why she did not adopt in the RFC the limitations in the Ince and Williams Opinions, both of which the ALJ found persuasive. (*Id.* at 24).

Because we review the ALJ's findings under the substantial evidence standard, we must ask whether there is such evidence as a reasonable person would accept as adequate to support a conclusion. Here, the ALJ provided a reason for the differences between the RFC and the Ince Opinion. The Ince Opinion included limitations with respect to completing tasks and distractibility, stating Plaintiff "has a long history of difficulty completing tasks and tests within normal time limits due to (a) frustrating distractibility. . . ." (R. 630). Plaintiff argues that the portion of the RFC which says he could work in two-hour intervals conflicts with the Ince Opinion. (Doc. # 18 at 24-25). However, the ALJ addressed this "difference" by explaining that "Dr. Ince's recommended accommodations are not indicative of an inability to perform simple tasks in a less demanding work environment." (R. 32). The ALJ further noted that Plaintiff's "collegiate curriculum exceeded the basic demands for unskilled work." (*Id.*). And, the ALJ reasoned that Plaintiff completed an associate degree and was able to work as a pharmacy technician. (*Id.*). This explanation is certainly adequate under the substantial evidence standard.

Plaintiff further contends that the Williams Opinion stated he is "moderately limited" in his ability to interact with supervisors. (Doc. #18 at 24). But, as explained above, the ALJ was not required to address ratings in the summary conclusion section of the state agency form. Therefore, the ALJ properly considered medical opinions and prior administrative findings.

**B.**     **<u>The ALJ Posed Proper Hypothetical Questions to the Vocational Expert.</u>**

Plaintiff next asserts that the ALJ did not pose proper hypothetical questions to the vocational expert. (Doc. #18 at 25-29). In the fifth step of the analysis, the burden shifts to the Commissioner to determine whether there is other work available "in significant numbers in the national economy that the claimant could perform in spite of his impairments." *Washington v.*

*Comm'r of Social Security*, 906 F.3d 1353, 1359 (11th Cir. 2018). To help determine if Plaintiff could perform other work, the ALJ obtained testimony from a VE. (R. 48-50; *see* 20 C.F.R. §§ 404.1566(e), 416.966(e)). In order for a VE's testimony to constitute substantial evidence of available work, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. . . ." *Knight v. Comm'r of Social Security*, 783 Fed. Appx. 962, 966 (11th Cir. 2019). Plaintiff claims that the ALJ failed to include limitations related to: his ability to interact with and respond to supervisors; his susceptibility to cold temperatures; his inability to complete tasks; and his absenteeism, in the hypothetical. (Doc. #18 at 26-29). However, the hypothetical questions posed to a VE "need only include the claimant's impairments, not each and every symptom of the claimant." *Kunz v. Comm'r of Soc. Sec,* 539 F. App'x 996 (11th Cir. 2013). If an ALJ includes all the limitations determined credible and relevant, and the hypothetical fully accounts for the claimant's limitations, the ALJ did not erroneously omit limitations. *See Chapman v. Comm'r of Soc. Sec.* 498 F. App'x 952 (11th Cir. 2012).

In response to a hypothetical question that included Plaintiff's RFC, the VE testified that the hypothetical individual could perform the representative jobs of photocopy machine operator, office helper, and routing clerk. (R. 48-50). The ALJ's hypothetical questions to the VE included all the limitations in the ALJ's RFC findings. (R. 26, 48-49). Therefore, the ALJ properly relied on the VE's testimony to find that Plaintiff could perform other work. (R. 34). *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

### 1.   Ability to Interact with and Respond to Supervisors

Plaintiff asserts that he was "limited in his ability to interact with supervisors" based on Dr. Williams's rating that his ability to accept instructions and respond appropriately to criticism from

supervisors was moderately limited. (R. 96; Doc. #18 at 26-27). However, as discussed above, Dr. Williams's rating that Plaintiff's ability was "moderately limited" is not a medical opinion or prior administrative medical finding under the regulations. *See* 20 C.F.R. §§ 404.1513(a)(2), (5), 416.913(a)(2), (5); POMS DI § 24510.060(B)(2)(a); *see also Land*, 494 F. App'x at 49; *Jones,* 478 F. App'x at 612. Rather, Dr. Williams's opinion as to Plaintiff's RFC assessment was that Plaintiff's "[c]ontact with the public and coworkers should be casual[,] [and] [f]eedback should be supportive." (R. 96). Dr. Williams did not opine that Plaintiff could not interact with supervisors, nor did he provide any functional limitations about Plaintiff's ability to interact with supervisors, aside from his assessment that "feedback should be supportive." (R. 96). *See* SSR 96-8p ("RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*.") (emphasis in original). Thus, Plaintiff has not shown that the ALJ erred.

### 2. Susceptibility to Cold Temperatures

Plaintiff contends that the ALJ's hypothetical failed to account for his alleged intolerance to extreme cold due to his Raynaud's syndrome. (Doc. #18 at 27). However, Plaintiff has not shown that such a limitation would have precluded him from being able to perform other work in the national economy. The three jobs identified by the VE – photocopy machine operator, office helper, and routing clerk – do not involve exposure to extreme cold. *See* U.S. Dep't of Labor, Dictionary of Operational Titles (DOT) (4th ed., 1991), § 207.685-014, 1991 WL 671745 (photocopying-machine operator), § 239.567-010, 1991 WL 672232 (office helper), § 222.687-022, 1991 WL 672133 (routing clerk). Moreover, the only evidence that Plaintiff's Raynaud's Disease is "[a]ggravated by cold weather" is Plaintiff's own subjective complaint during the Disability Medical Exam. (R. 593; *see* Doc. #18 at 27). The ALJ determined that Plaintiff's

16

"statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical and other evidence in the record." (R. 27). *See Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 711-12 (11th Cir. 2015) (upholding ALJ's evaluation of the claimant's symptoms where claimant's testimony was unsupported by the medical evidence).

And again, even if it were error to not conclude Plaintiff's subjective complaint (and, to be clear, it was not), the ALJ's failure to consider Plaintiff's intolerance to extreme cold is harmless because the jobs identified by the VE do not involve exposure to extreme cold. *See Jones v. Comm'r of Soc. Sec.*, 492 F. App'x 70 (11th Cir. 2012) (failing to include a claimant's limitations in hypothetical questions to a VE can be harmless if the functional requirements of the jobs identified by the VE do not appear to involve the limitations that were not included).

### 3.      Ability to Complete Tasks

Plaintiff asserts that he could not maintain attention for two hours at a time. (Doc. #18 at 28). However, Plaintiff failed to show such a limitation was warranted in the RFC finding or the hypotheticals posed to the VE. Plaintiff relies on Dr. Ince's evaluation report from 2001 as support. (Doc. #18 at 27-28). But, Dr. Ince did not opine that Plaintiff could not maintain attention to complete simple tasks at two-hour intervals. (R. 630). He simply recommended specific accommodations for Plaintiff in a class note-taking and test-taking environment. (*Id*.). As explained above, the ALJ reasonably interpreted Dr. Ince's report and found Plaintiff retained the capacity to maintain attention and concentration to carry out simple instructions in two-hour intervals, along with other limitations. (R. 26).

####        4.        Absenteeism

Plaintiff contends that the ALJ's RFC finding did not adequately reflect his problem with tardiness and absenteeism. (Doc. #18 at 28). However, Plaintiff has not shown that such a limitation was warranted. While Dr. Nichols opined that Plaintiff would be expected to have excessive absences and be off-task, (R. 642), the ALJ found Dr. Nichols's opinion was not persuasive and he articulated adequate reasons for that finding. (R. 32-33). As discussed below, substantial evidence supports the ALJ's evaluation of Dr. Nichol's opinion.

Plaintiff also contends it is not apparent that the ALJ considered the issue of absenteeism and tardiness. (Doc # 24 at 8). He argues that not attending a hearing for this case, being half an hour late to his second psychological examination with Dr. Nichols, and his report that he lost one job because of being late or not showing up demonstrates his problems with absenteeism. (*Id.* at 6). However, the ALJ plainly addressed absenteeism saying, "Dr. Nichols noted that [Plaintiff] could not perform activities within a schedule and be punctual within customary tolerances." (R. 29). The ALJ also noted that "Dr. Nichols states that [Plaintiff] would miss 5 to 10 days within a 30-day period due to his psychological symptoms." (*Id.*). However, as discussed more fully below, the ALJ did not find Dr. Nichol's opinion to be persuasive. Therefore, substantial evidence supports the ALJ's hypothetical questions posed to the VE.

####    C.    <u>The ALJ's Decision Is Supported by Substantial Evidence.</u>

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. (Doc. #18 at 29). Plaintiff's primary contention is that the ALJ did not address his problems with absenteeism and tardiness. (*Id.*; Doc. #24 at 6-8).

The court "'must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence.'" *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019). Substantial evidence is less than a preponderance; rather, it is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

The court concludes that the ALJ's decision is supported by relevant evidence that a reasonable person would accept as adequate to support its conclusion. Plaintiff reported that he lost his last job due to absenteeism and tardiness. (R. 525). He missed two of his three ALJ hearings. (R. 20). Plaintiff argues that the VE testified that absenteeism in excess of one day per month would preclude employment and that Dr. Nichols opined that he would miss five to ten days of work in a thirty-day period. (R. 79, 642). While Dr. Nichols opined that Plaintiff would be expected to have excessive absences and be off-task (R. 642), the ALJ found Dr. Nichols's opinion was not persuasive and articulated adequate reasons for that conclusion. (R. 32-33). Substantial evidence supports the ALJ's rejection of that portion of Dr. Nichols's opinion.

In addition to addressing the Nichols Opinion and finding it unpersuasive, the ALJ also addressed the evidence Plaintiff supplied regarding his losing his last job due to absenteeism. (R. 28). The only evidence that Plaintiff lost his last job due to absenteeism is found in notes from Plaintiff's October 26, 2016 visit with Carr Mental Wellness. (R. 525). That is, Plaintiff self-reported that he lost his job due to poor attendance and being late. (*Id.*). The ALJ addressed this evidence, saying "[c]linical notes from October 26, 2016, indicate that although he lost his job, he was doing 'okay.' [Plaintiff] indicated he lost his job due to poor attendance and being late." (R. 28). However, as the ALJ reasoned, Plaintiff did not attribute losing his job due to "problems

concentrating or difficulty completing tasks." (*Id.*). The ALJ noted that Plaintiff responded well to medication and routine outpatient care. (*Id.*). Therefore, substantial evidence supports the manner in which the ALJ evaluated Plaintiff's self-reported evidence of job loss due to absenteeism and the hypothetical questions she posed to the VE.

### D.   The ALJ Did Not Fail to Consider the Episodic Nature of Bipolar Disorder.

Plaintiff alleges that the ALJ improperly failed to consider the episodic nature of his bipolar disorder. (Doc. #18 at 29-31). The court disagrees.

At step two of the sequential evaluation, an ALJ must determine whether a claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is a medically determinable impairment that significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii); *Davis v. Barnhart*, 186 F. App'x 965, 967 (11th Cir. 2006). The claimant bears the burden of proving that he has an impairment or combination of impairments that is severe. *See Doughty*, 245 F.3d at 1278.

Here, the ALJ found in Plaintiff's favor by determining that Plaintiff had severe impairments of major depressive disorder, ADHD, and other physical impairments. (R. 23). The ALJ subsequently proceeded to the other steps of the sequential evaluation process. (R. 23-35). *See* 20 C.F.R. §§ 404.1520(a)(4)(ii)–(v), 4116.920(a)(4)(ii)–(v). As the Eleventh Circuit has stated:

> [T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied. Indeed, since the ALJ proceeded beyond step two, any error in failing to find that [claimant] suffers from [] additional severe impairments . . . would be rendered harmless.

*Packer v. Comm'r Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013).

Plaintiff contends that his depressive symptoms, his alleged confrontations with others, and his reported problems with absenteeism are signs of bipolar disorder, which is a severe impairment. (Doc. #18 at 29-30). As an initial matter, a medical diagnosis does not automatically establish the existence of a severe impairment. *See, e.g., Hutchinson v. Astrue*, 408 F. App'x 324, 326 (11th Cir. 2011) (stating "proof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work"). Moreover, a claimant's subjective complaints are insufficient to establish the existence of a medically determinable impairment, let alone a severe impairment. *See* 20 C.F.R. §§ 404.1529(b), 416.929(b) (stating a claimant's symptoms "will not be found to affect [the claimant's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present").

The ALJ found that Plaintiff's bipolar disorder was not severe, relying on a lack of "consistently exhibited signs associated with bipolar disorder." (R. 24). Although the ALJ found several other mental impairments, Plaintiff argues this purported error was nevertheless prejudicial because his bipolar-based limitations were not included in his RFC, especially with respect to his ability to interact with others. (Doc. #18 at 30). Plaintiff also claims the error is prejudicial because, had the ALJ found his bipolar disorder to be a severe impairment, the ALJ would not have rejected the Nichols Opinions—which relied in part on Plaintiff's bipolar disorder—and would likely have included in the RFC (1) limitations as to his ability to interact with supervisors; and (2) greater limitations as to his ability to interact with co-workers and the public. (Doc. #18 at 30-31). Plaintiff submits that if limitations closer to those identified by the Nichols Opinions had been adopted and included in his RFC, the VE would not have been able to identify work in the national economy that he could perform, and consequently he would have been awarded benefits. (*See* R. 81).

21

In the ALJ's finding that Plaintiff's bipolar disorder was non-severe, the ALJ noted that in April 2021, Dr. Nichols diagnosed Plaintiff with a "history of bipolar disorder (chronic)." (R. 24, 676). However, as the ALJ also noted, Plaintiff primarily received treatment for major depressive disorder and ADHD. (R. 24, 27-28, 511, 513, 515, 518, 520, 522, 524, 526, 529, 532). The ALJ also observed that Plaintiff has not consistently exhibited signs associated with bipolar disorder. (*Id.*). Indeed, Plaintiff's treatment notes from 2016 to 2018 showed he exhibited a happy mood and congruent affect, grossly intact cognition, and average fund of knowledge, and he had no suicidal, homicidal, or psychotic thoughts. (R. 28, 510-13, 515, 517-18, 520-22, 524, 526, 529, 532). Plaintiff also demonstrated appropriate mood and affect during examinations in 2020. (R. 29-30, 649, 656). Thus, substantial evidence supports the ALJ's finding that Plaintiff's bipolar disorder was not a severe impairment.

Other than Dr. Nichol's diagnosis, there is no evidence of bipolar disorder in the record. Even when Plaintiff was diagnosed with a "history of bipolar disorder (chronic)," his mental status examinations were unremarkable. (R. 675-76). On examination, Plaintiff's mood was within normal limits and congruent with his thought processes. (R. 675). He displayed an appropriate affect and good energy. (R. 675). While Plaintiff confirmed crying episodes, he denied having suicidal or homicidal ideations. (R. 675). He was oriented to person, place, time, and situation; and he showed adequate speed of mental processing, grossly intact recent and remote memory functions, adequate general fund of knowledge, and good judgment and insight. (R. 675-76). An ALJ need not account for the episodic nature of bipolar disorder when there are no episodes.

Plaintiff argues that many of his depressive symptoms are signs of his bipolar disorder— such as his confrontations with others, his fight with his nephew, and criminal charges related to

22

an incident with his mother. (Doc. #18 at 29-30). However, these depressive symptoms are not necessarily related to bipolar disorder, and the ALJ is not required to view them as such.

In support of his argument that the ALJ erred when she failed to consider the episodic nature of bipolar disorder, Plaintiff cites *Samuels v. Acting Comm'r of Social Security*, 959 F.3d 1042, 1046 (11th Cir. 2020) ("The ALJ must consider nature of bipolar disorder") and *Schink v. Comm'r of Social Security*, 935 F. 3d 1245, 1245 (11th Cir. 2019). But, to the extent Plaintiff relies on *Samuels* to challenge the ALJ's decision, his reliance is misplaced. (*See* Doc. #18 at 30). The ALJ in *Samuels* found the claimant's bipolar disorder was a severe impairment, but the ALJ's hypothetical question posed to the VE did not account for all the limitations caused by the claimant's bipolar disorder that were "reflected in the record." 959 F.3d at 1047. Specifically, the ALJ in *Samuels* did not account for unexcused absences or time spent off-task where the State agency reviewing psychological expert found that the claimant's "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances was 'markedly limited.'" (*Id.*). That is not the case here.

In the instant case, the ALJ did not find bipolar disorder to be a severe impairment. (R. 23). Also, Dr. Williams expressly noted that Plaintiff could carry out simple instructions and sustain attention to routine and familiar tasks for extended periods. (R. 95). Although Plaintiff cites Dr. Nichols's opinion to show that he had greater limitations (Doc. #18 at 30), the ALJ property considered Dr. Nichols's opinion and found it unpersuasive. Plaintiff has failed to show that he had limitations greater than those already found by the ALJ.

**E.**     **The ALJ Articulated an Assessment Regarding the Consistency and Supportability of the Nichols, Williams, and Estock Opinions.**

Plaintiff asserts that the ALJ failed to provide an articulate assessment of the "consistency" and the "supportability" of the Nichols, Williams, and Estock opinions. (Doc. #18 at 31-38); *see* 20 C.F.R. § 404.1520c, 416.920c. That argument is off the mark.

**1.     Consistency and Supportability of the Nichols Opinions**

The ALJ is permitted to articulate what consideration is given to multiple opinions from one medical source in a single analysis. *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Here, the ALJ noted Dr. Nichols's opinion was internally inconsistent. (R. 32). In May 2021, Dr. Nichols reported Plaintiff had mostly mild -- and no more than moderate -- limitations in various mental work-related functional areas. (R. 31-32, 671-72). But that statement contradicts Dr. Nichols's conclusions in the November 2019 and April 2021 evaluation that Plaintiff could not maintain effective social interaction on a consistent and independent basis with supervisors, coworkers, and the public. (R. 32-33, 641, 677). Notably, Dr. Nichols's May 2021 statement is also inconsistent with the December 2019 statement that Plaintiff could not interact with supervisors and coworkers, without providing any basis for the new opinion. (R. 29, 31, 642, 671-72). The ALJ also noted that Dr. Nichols's statement that Plaintiff could manage his own funds is in conflict with the statement that his mother took care of everything for him. (R. 33, 677).

As the ALJ explained, Dr. Nichols's assessment that Plaintiff had more severe limitations was also inconsistent with the mental examination findings that were generally within normal limits. (R. 29, 639-40, 675-76). During the November 2019 examination, Plaintiff provided good eye contact and was oriented to person, place, time, and situation. (R. 29, 639-40). Plaintiff

exhibited a clear stream of consciousness, and good judgment and insight. (*Id.*). While he had a depressed mood, he denied having suicidal or homicidal ideations, panic attacks, obsessions, or compulsions. (*Id.*). In April 2021, Plaintiff again presented as neat and clean, and maintained fair eye contact. (R. 30, 675). Plaintiff's mood was within normal limits and congruent with his thought processes. (R. 675). He demonstrated an appropriate affect and a clear stream of consciousness, he was oriented to person, place, time, and situation, and he demonstrated an adequate general fund of knowledge and speed of mental processing. (R. 29, 675). His recent and remote memory functions appeared to be grossly intact, and his thought processes were within normal limits. (R. 30, 675-76). Thus, the ALJ properly considered the supportability factor. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

The ALJ further explained why Dr. Nichols's opinion was inconsistent with the bulk of evidence in the record. (R. 32). "The more consistent a medical opinion or prior administrative medical finding is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (cleaned up). As the ALJ noted, Plaintiff presented for examinations at the Canterberry Family Practice Center in January 2020 through April 2020. (R. 29-30, 648-49, 656, 659-60). In January 2020, Plaintiff was oriented to time, place, person, and situation, and he demonstrated appropriate mood and affect, normal insight, and normal judgment. (R. 30, 649). The following month, Plaintiff was oriented to time, place, person, and situation, and he demonstrated appropriate mood and affect. (R. 30, 656). In April 2020, Plaintiff was cooperative, although he had an anxious mood, mildly elevated affect, pressured speech, and circumstantial thought process. (R. 30, 660). Although Plaintiff displayed an impairment of

attention, concentration, and short-term memory, Plaintiff otherwise demonstrated average intelligence, and his thought content was within normal limits. (R. 30, 660). After considering the consistency factor, the ALJ properly found Dr. Nichols's opinion unpersuasive.

**2.      Supportability and Consistency of the Williams and Estock Opinion**

In addition to addressing the Williams and Estock Opinions in close proximity to one another, the ALJ provided specific analysis of both Opinions. (R. 31-32). The ALJ provided an articulate assessment regarding the consistency and supportability of the Nichols, Williams, and Estock opinions.

**F.      The ALJ Addressed the Persuasiveness of the Medical Opinions at Issue.**

Plaintiff contends that the ALJ failed to address the persuasiveness of the medical opinions. (Doc. #18 at 39-40). Adjudicators are to consider the persuasiveness of opinions from all medical sources. *See* 20 C.F.R. § 1520c(a). Persuasiveness is determined by considering five factors: supportability, consistency, relationship with the claimant, specialization, and other factors. *See id.* Consistency is one of the most important factors for evaluating persuasiveness. *See* 20 C.F.R. § 404.1520c(a).

Adjudicators must articulate how they consider the medical opinions. The articulation requirements should allow a subsequent reviewer or reviewing court to trace the path of the adjudicator's reasoning. 82 Fed. Reg. 5858 (Jan. 18, 2017). But, adjudicators need not articulate individually how they considered each medical opinion when a medical source provides multiple opinions. *See* 20 C.F.R. §§ 404.920c(b)(1), 416.1520c(b)(2). Also, adjudicators are not required to explain how they considered the other factors besides consistency and supportability. *See id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The other facts must be articulated only if there are two or more

conflicting but equally persuasive medical findings on the same issue that are equally well supported and consistent. *See id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

### 1.     Reddy Opinion

The ALJ properly considered the prior administrative medical finding of Dr. Reddy, who evaluated the evidence of record in November 2018. (R. 91-92, 105). Regarding Plaintiff's DIB claim, Dr. Reddy noted there was insufficient evidence prior to the expiration of Plaintiff's date last insured of September 30, 2009. (R. 105). Regarding Plaintiff's SSI claim, Dr. Reddy noted that the overall objective findings did not support any currently severe physical impairments. (R. 91-92).

The ALJ found Dr. Reddy's opinion is persuasive because it is supported by and consistent with the contemporaneous treating notes. (R. 31). *See* 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ discussed how the record showed that Plaintiff exhibited a normal gait. (R. 28, 31, 594, 647, 655). During a consultative examination in November 2018, Plaintiff could heel and toe walk, and he exhibited 5/5 grip strength, though he had decreased range of motion of the neck and left shoulder. (R. 28, 594). Additionally, therapy notes between 2016 and 2018 revealed that Plaintiff's psychomotor activity was within normal limits. (R. 510, 514, 517, 519, 521, 523, 526). While Dr. Reddy did not find any severe physical impairments at the time of her review, the ALJ considered the entire record and determined Plaintiff had severe physical impairments of avascular necrosis of the right wrist and left shoulder acromioclavicular joint separation. (R. 23).

### 2.    Williams Opinion

Dr. Williams reviewed the evidence of record in September 2018 in relation to Plaintiff's SSI application. (R. 92-96). Dr. Williams opined that Plaintiff could carry out simple instructions, sustain attention to routine and familiar tasks for extended periods, and tolerate light work pressures; should avoid rapid changes; and could adapt to infrequent, well-explained changes. (R. 95-96). Dr. Williams further opined Plaintiff's contact with the public and coworkers should be casual, and feedback should be supportive. (R. 96).

The ALJ found Dr. Williams' opinion to be "generally persuasive with the exception of portions that provide vague, non-vocationally relevant terms." (R. 32). The ALJ explained, for instance, that Dr. Williams reported Plaintiff could tolerate light work pressures and should avoid rapid changes, but he did not clarify or provide examples of the limitations in an everyday work setting. (R. 32, 95). The ALJ noted that the opinion was mostly consistent with contemporaneous psychiatric notes and that treatment notes generally showed mild to moderate symptoms and limitations. (R. 28-32, 510-13, 515, 517-18, 520-22, 524, 526, 529, 532, 649, 656, 660). The ALJ further noted that the record did not show inpatient psychiatric hospitalizations. (R. 32, 674). Accordingly, the ALJ reasonably found Dr. Williams' opinion generally persuasive.

Plaintiff contends that, based on Dr. Williams' rating that Plaintiff was moderately limited in interacting with supervisors and responding appropriately to criticism from supervisors, the ALJ should have included an additional limitation related to his ability to interact with or respond to supervisors in her RFC finding. (R. 96; Doc. #18 at 24). However, as explained above, the rating cited by Plaintiff is in the summary conclusion section of the state agency form. (R. 94-96). In the narrative portion of the form, Dr. Williams noted that Plaintiff's contact with the public and

coworkers should be casual, and feedback should be supportive. (R. 96). As the ALJ explained, she found Dr. Williams' opinion generally persuasive with the exception of portions that provide vague, non-vocationally relevant terms. (R. 32). The ALJ reasonably accounted for Dr. Williams' opinion in the RFC by finding Plaintiff could: maintain attention and concentration to carry out simple instructions in at least two-hour intervals over an 8-hour workday with customary work breaks; have occasional contract with coworkers and the general public; and could adapt to infrequent, well-explained changes in the work environment. (R. 26). Plaintiff has not shown that Dr. Williams' opinion required greater limitations that those the ALJ included in the RFC finding.

### 3. Ince Opinion

Plaintiff contends that, based on the report of Dr. Ince, he could not perform work for two hours at a time. (Doc. #18 at 24-25). But, the evidence does not support this claim. Dr. Ince did not opine that Plaintiff could not perform work that involved simple tasks at two-hour intervals with customary breaks. (R. 630).

The ALJ properly considered Dr. Ince's report. Dr. Ince performed a psychoeducational evaluation of Plaintiff in 2001. (R. 27, 627-31; *see* Doc. #18 at 24-25). Dr. Ince recommended that Plaintiff be provided with extended test time, test-taking in a private room with minimal distractions, priority registration, and that he be allowed to tape-record class lectures or have access to a notetaker's class notes. (R. 32, 630). In reaching his recommendation, Dr. Ince noted Plaintiff had "frustrating distractibility associated with his Attention Deficit Disorder" and a perfectionistic concern." (R. 630).

Dr. Ince did not provide a medical opinion as defined by the revised regulations. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Rather, Dr. Ince provided recommendations for

accommodations that would benefit Plaintiff in a school setting in terms of test taking and note taking in class. (R. 630). Dr. Ince did not identify what Plaintiff could still do despite his impairments and what limitations he had in performing the mental demands of work activities. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Because Dr. Ince did not provide a medical opinion, the ALJ was not required to evaluate the persuasiveness of his 2001 report. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

Nevertheless, the ALJ discussed Dr. Ince's 2001 report and noted that it was consistent with Plaintiff's ability to perform a range of simple work. (R. 32, 630). The ALJ explained that Dr. Ince's recommended accommodations are not indicative of an inability to perform simple tasks in a less demanding work environment. (R. 32, 630). And, the ALJ acknowledged that Plaintiff was successful in acquiring an associate degree. (R. 32, 59). Thus, the ALJ reasonably interpreted Dr. Ince's recommendations and determined that Plaintiff retained the ability to perform simple tasks with the reasonable limitations provided for in his RFC finding.

### 4.    Estock Opinion

The ALJ also considered the prior administrative medical finding of Dr. Estock, who reviewed the evidence of record in November 2018 in relation to Plaintiff's DIB claim. (R. 106). As Dr. Estock noted, Plaintiff's date last insured expired on September 30, 2009. (R. 23, 106). He determined that while Plaintiff had currently medically determinable impairments of ADHD and depressive disorder, there were no objective findings to establish a potential MDI or severity prior to the expiration of his date last insured. (R. 106).

The ALJ found Dr. Estock's opinion to be generally persuasive and noted that the opinion was "consistent with the limited evidence in the record prior to the date last insured." (R. 32). An

evaluation report from December 2007 showed Plaintiff was diagnosed with ADHD, anxiety disorder, major depressive disorder, and past marijuana and alcohol abuse periods. (R. 27, 635). However, the ALJ noted, the December 2007 report lacked objective mental status examination findings. (R. 634-35). Although the ALJ found Dr. Estock's opinion generally persuasive, she was not required to adopt Dr. Estock's opinion. *See* 20 C.F.R. §§ 404.1520c(a), 416.1520c(a).

### 5.     Non-Specific Conflicts

Plaintiff also contends that the ALJ failed to resolve conflicts between the medical opinions and his RFC finding. (Doc. #18 at 23-25). However, the regulations state an ALJ need not defer to any medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(a), 416. 920c(a). These regulations do not indicate that a "persuasive" opinion or prior administrative finding is "controlling" with respect to an RFC finding. *See id.* They do not require an ALJ to adopt in the RFC every part of an opinion or prior administrative medical finding that she finds persuasive. *See* 20 C.F.R. §§ 404.1520c(a)-(b), 416. 920c(a)-(b). The ALJ did not err in making these findings.

## VI.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that the proper legal standards were applied in reaching this determination. The Commissioner's final decision is, therefore, due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this March 18, 2024.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE